## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

JAMES J. NAPLES,
**Assignee of Pinewood Enterprises**                                      APPELLANT

v.                                    No. 4:13-cv-667-DPM

RENEE S. WILLIAMS, Chapter 7
Trustee, LHSW; UNITED STATES
TRUSTEE; and MICHAEL E.
COLLINS, Chapter 11 Trustee                                      APPELLEES

and

**A.K. TENNESSEE IRREVOCABLE TRUST;**
**KIMBRO STEPHENS INSURANCE TRUST;**
**DAVID KIMBRO STEPHENS, Individually and on**
behalf of all the equitable beneficiaries of the
Kimbro Stephens Insurance Trust and the A.K.
Tennessee Irrevocable Trust                                      APPELLANTS

v.                                    No. 4:13-cv-670-DPM

RENEE S. WILLIAMS; MICHAEL E. COLLINS;
UNITED STATES TRUSTEE; LIVING HOPE
INSTITUTE, INC.; ESTATE OF WANDA J.
STEPHENS, a/k/a Wanda J. Stephens; and
JAMES J. NAPLES                                      APPELLEES

and

**GREG STEPHENS**                                      APPELLANT

v.                                    No. 4:13-cv-723-DPM

RENEE S. WILLIAMS, Chapter 7 Trustee, LHSW;
MICHAEL E. COLLINS, Chapter 11 Trustee;
JAMES J. NAPLES, Assignee of Pinewood
Enterprises, L.C.; U.S. TRUSTEE;
LIVING HOPE INSTITUTE, INC.; A.K. TENNESSEE

**IRREVOCABLE TRUST; KIMBRO STEPHENS
INSURANCE TRUST; and DAVID KIMBRO
STEPHENS, Individually and on behalf of the A.K.
Tennessee Irrevocable Trust, the Kimbro Stephens
Insurance Trust, and their equitable beneficiaries**                    **APPELLEES**

## ORDER

**1.** Three appeals remain undecided.  The deep issue in all three is the bankruptcy court's appointment of a trustee for Living Hope Southeast.  In No. 4:13-cv-667, Dr. James Naples urges that the court so abused its discretion in various ways during the four trial days that the appointment decision can't stand.  He also argues that the court clearly erred in making many findings beyond those needed on appointment.  In No. 4:13-cv-670, Kimbro Stephens and related trusts attack the appointment decision primarily based on how Judge Evans handled Living Hope Southeast's pre-trial firing of its lawyer, Smith.  Kimbro likewise argues various clear errors in the facts found, particularly in the July 2013 addendum.  In No. 4:13-cv-723, Greg Stephens (Kimbro's brother) challenges the trustee's appointment, arguing mainly that Judge Evans's various rulings, both in structuring the hearing and on the merits, show bias.  Greg also asserts error in various factual findings.  The United States Trustee advances many arguments about why this Court

shouldn't reach the merits in any of these appeals.  And on the merits, the Trustee says the bankruptcy court's appointment order should be affirmed.

**2.** None of the Trustee's arguments for stopping these appeals at the door is persuasive.  First, this Court has jurisdiction to consider the appointment issue and the rulings on the related post-appointment motions. Second, each appellant has standing because each is a person aggrieved financially by the Trustee's appointment. *In re Peoples*, 764 F.3d 817, 820 (8th Cir. 2014).  Naples is one of the Living Hope Southeast's largest creditors.  The Stephenses, and their related entities, either have ownership interests in the debtor or are purported creditors.  The Stephenses and their entities lost control of the debtor after the appointment.  And many of the appellants were involved in the attempted settlement of the Miller County litigation, which prompted in part the motions for appointment.

Finally, the appeals present justiciable issues. *Ritchie Special Credit Investments, Ltd. v. U.S. Trustee*, 620 F.3d 847, 852 (8th Cir. 2010).  While much fire is directed at the bankruptcy court's findings, especially in the addendum, in general the appellants want the new Living Hope Southeast Trustee ousted based on alleged errors in the bankruptcy court's findings and in trial procedure.  (Given his argument as a whole, the Court allows Kimbro to

retract the unguarded sentence in his brief, which concedes that the appointment was within the bankruptcy court's discretion.)   While this Court's scope of review is narrow, the Court declines to hold that no live, reviewable controversy involving these parties and the Trustee's appointment exists.  One does.

**3.** The bankruptcy court didn't abuse its discretion in appointing a trustee in this Chapter 11 case. *Ritchie*, 620 F.3d at 853.  The conclusion is the same whether this appointment is evaluated as a matter of cause, 11 U.S.C. § 1104(a)(1), or the best interests of everyone affected, 11 U.S.C. § 1104(a)(2).  The Court has read the trial transcript, considered key exhibits, and studied the appealed orders and the parties' briefs.  No reversible error of law is present.  And no clear error of fact exists in the bankruptcy court's credibility-based findings as clarified in the rulings on the post-trial motions.  The denial of those motions, which were mostly re-argument, was within the court's wide discretion. *In re Paulson*, 477 B.R. 740, 744, 746 (B.A.P. 8th Cir. 2012).

This record justified the bankruptcy court's conclusion that Kimbro exercised substantial control over Living Hope Southeast's litigation-related affairs and, in concert with his brother Greg, acted improperly.  Two examples

suffice: Kimbro and Greg's attempt to file a consent judgment in Pinewood's Miller County case in the wake of Judge Mixon's ruling adverse to Living Hope Southeast in AP-7023; and Kimbro's filing a federal lawsuit on behalf of Living Hope Southeast. Both filings were done without bankruptcy court approval, and both were conceded at trial. The bankruptcy court didn't clearly err in disbelieving Kimbro and Greg's explanation for their actions or in concluding instead that they were acting in the family's interest, rather than in the interest of the debtor or all the creditors.

The bankruptcy court's alternative holding—a trustee was needed to serve the parties' interests and the estate's—was likewise within the court's "particularly wide discretion" under § 1104(a)(2). *In re Keeley & Grabanski Land Partnership*, 455 B.R. 153, 165 (B.A.P. 8th Cir. 2011). The litigation involving this debtor and related entities is like kudzu. It just keeps growing, and it exemplifies the "deep seeded conflict and animosity between a debtor and its creditors . . ." that justifies the extraordinary step of dispossessing a Chapter 11 debtor to achieve a confirmable plan. *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998). To be sure, the record established, and the court found, that the Stephens interests and the Pinewood interests had

recently made (with proposed new counsel) much progress toward a settlement and plan. But the court further found that this aborning agreement favored the Stephens and Pinewood interests over the interests of the debtor's other main creditor, the Living Hope Southwest estate. That conclusion is not clearly erroneous. Here again, a judgment call had to be made based on the conflicting evidence on four trial days across approximately three weeks. The record amply supports the court's decision.

**4.** Naples, proceeding in Pinewood's stead, argues that the bankruptcy court mishandled the trial and tainted the appointment decision. This Court disagrees.

First, Living Hope Southeast wasn't forced to fight the trustee issue without a lawyer. Before trial the debtor had fired Smith and moved to substitute Robertson. The court deferred ruling on substitution until after ruling on a trustee. But the court also allowed Robertson to participate in the trustee trial as proposed counsel for the debtor. Robertson did so—fully, zealously, and effectively. She was one of two main counsel opposing appointment. The transcript reflects Robertson's good work.

Second, the bankruptcy court's decision to have two lead lawyers on

each side of the appointment issue didn't hinder or adversely affect any party. It made the trial run smoothly. No one objected when the court announced the procedure at the start of the first trial day. There were only a few instances, across the four days of trial, where a party asked for more questioning and was denied. (Kimbro, for example, said at one point that he would have asked himself some questions to explain something if he had been allowed.) Each party was allowed to present and defend its own witnesses. There was, overall, simply no unfairness or prejudice in the two-lead-voices procedure. While it was no doubt a surprise on day one, all the parties had an opportunity to react and coordinate, if they chose to do so, during the approximately three-week period that covered the four trial days.

Last, this Court sees no abuse of discretion in the bankruptcy court's handling of Smith's testimony. He was a rebuttal witness for the Trustees. On behalf of the debtor, Robertson crossed him thoroughly. Naples had no additional cross, except for one area the court had already ruled off limits. There was some narrative, but not too much. To put it in one kind of perspective, Smith's testimony covers less than thirty pages in this eight-hundred-fifty-page record. Smith also said a few sentences by way of

opening on the first day (without objection); he spoke a few times briefly on other days (again without objection); and, after the court's invitation at the end of trial, he spoke four sentences about the AP-7023.  Naples's lawyer asked for cross on this last point, but the court refused.  While it would have been better to allow a brief cross examination, Smith's words were cumulative and on a marginal point:  essentially that the debtor had no solid defense in the AP-7023, and minimizing damages from the Living Hope Southwest to Living Hope Southeast post-petition transfer was thus the only sound strategy.  The bankruptcy court did not abuse the wide discretion every trial court has to control the flow of testimony. *LaRo Corp. v. Big D Oil Co.*, 824 F.2d 689, 690 (8th Cir. 1987); FED. R. EVID. 611.

Taken as a whole, the court's challenged trial procedures do not justify reversing the appointment ruling.

**5.** Kimbro focuses his appeal on Smith, Living Hope Southeast's former lawyer.  Many of Kimbro's arguments about Smith's role in the trial overlap with Naples's arguments, which the Court has already addressed.  Kimbro, moreover, told the bankruptcy court at the start that he accepted the two-lead-lawyers procedure; he said his participation would be minimal; and he

adopted Robertson's arguments for the debtor. № *1-38 at 13*[*]. He can't backtrack now.

Kimbro also argues that the attorney/client privilege was violated. That privilege, though, belonged to Living Hope Southeast, Smith's client, not to Kimbro. And the debtor waived it. Living Hope Southeast offered extended testimony from Grundy (the debtor's long-time chief executive officer) about Smith's advice, his words, and his actions. Kimbro himself gave extensive testimony about Smith's advice and actions while representing the debtor. *Eg.*, № *1-40 at 14–28, 50–51, 60.* Finally, the debtor didn't object when the Trustees called Smith in rebuttal, and the debtor's proposed counsel cross examined Smith about his work as the debtor's counsel. The privilege on all this was waived. *United States v. Davis*, 583 F.3d 1081, 1090 (8th Cir. 2009).

Kimbro also argues hard that the bankruptcy court erred on Smith because Living Hope Southeast had an absolute right to fire its lawyer. The Court sees no error here. The bankruptcy court allowed the debtor's proposed counsel to participate in the trustee trial. Robertson took a leading

---

[*] For simplicity, all the transcript citations are to the record in No. 4:13-cv-667.

role and did solid work. So the court's deferral of the substitution issue didn't prejudice the debtor or Kimbro. The parties' arguments are at extremes: Kimbro says Arkansas law gave Living Hope Southeast the absolute right to fire Smith; while the Trustee argues that 11 U.S.C. § 327(a) and related provisions pre-empt Arkansas law about hiring and firing bankruptcy lawyers. The Court need not address either point. Whatever the precise relation between state and federal law here, no reversible error occurred in connection with the appointment trial. The debtor was ably represented by counsel of its choice, counsel Kimbro made plain he had approved too. The bankruptcy court must have *some* role where a debtor proposes new counsel. The bankruptcy court's management of that issue in these strained circumstances was careful, not erroneous.

**6.** Greg makes many echoing arguments about Smith and trial procedure. He ties it all together with a new general point: the bankruptcy court was biased against him and his brother. This alleged bias, Greg says, is what prompted the various challenged rulings, including the ultimate decision to appoint a trustee.

This record shows no bias. It shows an experienced judge, acting firmly

when necessary, and ably managing contentious parties, zealous lawyers, and complicated evidence.  The bankruptcy court had to discern some hard truths about the parties' actions.  Exercising judgment doesn't show bias.  It's what judges must do.  Adverse rulings, standing alone, demonstrate neither bias nor lack of impartiality. *United States v. Oaks*, 606 F.3d 530, 536–37 (8th Cir. 2010); *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 665 (8th Cir. 2003)

**7.** All the appellants argue that, for various reasons, the bankruptcy court went too far in its findings, especially in its lengthy addendum.  This Court sees no reversible error, though.

Some preliminary points.  First, much of the addendum is procedural history and background.  This is helpful context.  Second, the Court rejects the Trustee's arguments that the findings are unreviewable.  The "we review judgments, not findings" precedent involves other circumstances:   an appellate court affirming a judgment for reasons other than those given by the trial court, *e.g.*, *United States Gypsum Co. v. Greif Brothers Cooperage Corp.*, 389 F.2d 252, 262 (8th Cir. 1968); or an appeal that seeks reversal of adverse findings but not of the judgment, *e.g.*, *In re Williams*, 156 F.3d 86, 89–90 (1st Cir. 1998).  Neither circumstance is present here.  The appellants challenge

appointment of a trustee *and* the findings that explain why the appointment was made. Third, while there is certainly good authority for the proposition that findings of fact should be spare and pointed, by way of example there's equally good authority for the narrative form used here. *Compare Petterson Lighterage & Towing Corp. v. New York Central Railroad Co.*, 126 F.2d 992, 996 (2nd Cir. 1942) (L. Hand, J.), *with Frigaliment Importing Co. v. B.N.S. International Sales Corp.*, 190 F. Supp. 116, 121 (S.D.N.Y. 1960) (Friendly, J., sitting by designation). This is not a case like *Brown Paper Mill Co. v. Irvin*, 134 F.2d 337, 337–38 (8th Cir. 1943), where lawyer-prepared findings were so confused about facts and law that the Court of Appeals couldn't tell exactly what the district court had found the few material facts to be. Issuing a handful of pithy findings, like a jury's answers to interrogatories, is a commendable method. But in this Court's experience it is rarely used these days. The bankruptcy court's findings here were comprehensive; and this thoroughness aided in appellate review, explaining the "why" of these discretionary decisions. Some cases call for extensive findings. It was within the trial court's discretion to say this was one of them.

Now to the merits of the bankruptcy court's findings. As clarified by

the orders on the post-trial motions, there's no clear error in them that would invalidate the appointment decision. Kimbro's critique, and Greg's, is re-argument. But it's not this Court's place to retry the appointment issue on appeal. *In re Ozark Restaurant Equipment Co.*, 850 F.2d 342, 346 (8th Cir. 1988).

There's a deeper point. The debtor, Kimbro, and Greg had a common strategy at trial: blame Kimbro and Greg, not Living Hope Southeast, for the attempted Miller County consent judgment, the unauthorized federal lawsuit in the debtor's name, and the creation of a family-staffed board to take the place of the ailing Robert Williams as the voice of the debtor's 99% owner; these missteps were, the testimony ran, the individuals' alone, and they were done with good intentions. *E.g., № 1-38 at 29–31; № 1-39 at 108–09, 121–22, 134; № 1-40 at 12–13, 46–48.* Kimbro and Greg were unequivocal about their personal responsibility. *№ 1-39 at 134; № 1-40 at 12–13.* The bankruptcy court made a credibility-based judgment that their intentions weren't pure, and that legal consequences should result for Living Hope Southeast and each of them. Kimbro and Greg put themselves at this risk.

Last, on potential preclusive effects from the findings. The Trustee is correct: addressing preclusion issues would be premature. This must be

resolved, as any issue may arise, by the bankruptcy court in later specific
disputes in the case.

* * *

The bankruptcy court's orders challenged in No. 4:13-cv-667, No. 4:13-cv-670, and No. 4:13-cv-723 are affirmed.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

26 February 2015

-14-